# EXHIBIT A

All Law Division initial Case Management Dates will be heard via Zoom.
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME/Zoom-Links/Agg4906_SelectTab/12
Remote Court date: 12/1/2022 9:00 AM

6-Person Jury

FILED
9/20/2022 5:16 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L008466
Calendar, H
19573482

FILED DATE: 9/20/2022 5:16 PM 2022L008466

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

**TANIA APRILLIA**, as Personal Representative of the Estate of **IUSKANDAR**, and individually;

**TANIA APRILLIA**, as Personal Representative of the Estate of **NELLY**, and individually;

**BENEDIKTUS BEKE**, as Personal Representative of the Estate of **TEOFILUS LAU URA DARI**, and individually;

**GABRIEL DALA EMA**, as Personal Representative of the Estate of **SEVIA DARO**, and individually;

**SYARIF RAFIK**, as Personal Representative of the Estate of **PANCA WIDIA NURSANTI**, and individually; and as next friend of his minor children **S.F.Z.** and **S.A.H.**;

**MUSTAFA**, as Personal Representative of the Estate of **RUSNI**, and individually;

**MUSTAFA**, as Personal Representative of the Estate of **DANIYA**, and individually;

**MARTHA SARI**, as Personal Representative of the Estate of **RICKO**, and individually; and as next friend of her minor child **G.B.M.**;

**PANDU DEWANATA**, as Personal Representative of the Estate of **RION YOGATAMA**, and individually;

**ROSMAH**, as Personal Representative of the Estate of **ROSI WAHYUNI**, and individually;

**ROSMAH**, as Personal Representative of the Estate of **RIZKY WAHYUDI**, and individually;

Case No. 2022L008466

**PLAINTIFFS DEMAND TRIAL BY JURY**

FILED DATE: 9/20/2022 5:16 PM 2022L008466

**ROSMAH**, as Personal Representative of the Estate of **ARKANA NADHIF WAHYUDI**, and individually;

**ROSMAH**, as Personal Representative of the Estate of **NABILA ANJANI**, and individually;

**IRMA**, as Personal Representative of the Estate of **SUPIANTO**, and individually;

**SRI WISNUWATI**, as Personal Representative of the Estate of **SUYANTO**, and individually; and as next friend of her minor child **S.A.**;

**RAMSIAH**, as Personal Representative of the Estate of **YOHANES SUHERDI**, and individually;

Plaintiffs,

vs.

**THE BOEING COMPANY**, a Delaware corporation,

Defendant.

## COMPLAINT

Now comes Plaintiffs, through their lawyers, to allege the following complaint against defendant The Boeing Company ("Boeing"):

## NATURE OF ACTION

1. Plaintiffs seek to recover damages caused by personal injuries and wrongful death of plaintiffs' decedents while passengers on board Sriwijaya Air Flight SJ182, which crashed in the Java Sea on or about January 9, 2021.

## JURISDICTION & VENUE

2. Plaintiffs are all citizens and residents of Indonesia.

FILED DATE: 9/20/2022 5:16 PM 2022L008466

3. Sixty-two persons died in the crash of Sriwijaya Air Flight SJ182, all in one location.

4. Defendant Boeing has a permanent presence doing business in Illinois and, at the time of the airplane crash that is the subject of the case, had its headquarters in Illinois.

5. Accordingly, this Court has jurisdiction over the subject matter of this litigation and the parties in this action.

6. Venue is proper in the Superior Court of Cook County as Defendant Boeing is present and has its principal place of business in Cook County, Illinois.

## PARTIES

7. Plaintiff TANIA APRILLIA is the daughter of Decedent IUSKANDAR, the oldest of his three children, and Personal Representative of Decedent's Estate.

8. Plaintiff TANIA APRILLIA is the daughter of Decedent NELLY, the oldest of her three children, and Personal Representative of Decedent's Estate.

9. Plaintiff BENEDIKTUS BEKE is the relative of Decedent TEOFILUS LAU URA DARI and the personal Representative of Decedent's Estate.

10. Plaintiff GABRIEL DALA EMA is the relative of Decedent SEVIA DARO and Personal Representative of Decedent's Estate.

11. Plaintiff SYARIF RAFIK is the husband of Decedent PANCA WIDIA NURANTI, father of their four children, including two minors, S.F.Z. and S.A.H, and Personal Representative of the Estate.

FILED DATE: 9/20/2022 5:16 PM 2022L008466

12. Plaintiff MUSTAFA is the brother of Decedent RUSNI, and Personal Representative of the Estate.

13. Plaintiff MUSTAFA is the uncle of Decedent DANIYA, and Personal Representative of the Estate.

14. Plaintiff MARTHA SARI is the wife of Decedent RICKO, mother of their minor child G.B.M., and Personal Representative of the Estate.

15. Plaintiff PANDU DEWANATA is the brother of Decedent RION YOGATAMA and the Personal Representative of the Estate.

16. Plaintiff ROSMAH is the mother of ROSI WAHYUNI, grandmother of RIZKY WAHYUDI, and great grandmother of ARKANA NADHIF WAHYUDI and NABILIA ANJANI, and Personal Representative of all their Estates.

17. Plaintiff IRMA is the wife of Decedent SUPIANTO and the Personal Representative of the Estate.

18. Plaintiff SRI WISNUWATI is the wife of Decedent SUYANTO, mother of their minor child S.A., and the Personal Representative of the Estate.

19. Plaintiff RAMSIAH is a relative of Decedent YOHANES SUHERDI and the Personal Representative of the Estate.

20. Defendant Boeing is a corporation organized and existing under the laws of the State of Delaware which it has its principal place of business in and has a permanent presence doing business in Illinois and, at the time of the airplane crash that is the subject of the case, had its headquarters in Illinois.

**FACTS**

FILED DATE: 9/20/2022 5:16 PM 2022L008466

21. Defendant Boeing designed, manufactured, assembled and sold a Boeing 737-500 aircraft, registration PK-CLC, which crashed into the Java Sea on or about January 9, 2021.

22. There were 50 passengers – 43 adults and seven children – as well as 12 crew members. Everyone on board died.

23. At the time of the accident, the subject aircraft was being used for its intended purpose of transporting passengers and crew in a commercial flight.

24. Boeing manufactured, sold and delivered the aircraft from Washington State in the United States. Continental Airlines purchased the plane on or about May 31, 1994. United Airlines began using the plane on or about October 1, 2010. Sriwijaya Air put the plane into service on or about May 15, 2012.

25. After the sale of the aircraft, defendant Boeing continued to provide after-sale service, instruction, and advice for the operation of the aircraft.

26. The Boeing 737-500 is part of the "classic" series of Boeing aircraft, which includes the 737-300 and 737-400, produced from 1984 until 2000.

27. In 2001, the FAA became aware of a design defect and ordered operators of the 737 aircraft, specifically including the 737-500, to replace the automatic throttle computer after reports of unequal thrust.

28. In June of 2007, a 737-500 landing in Belfast, Ireland, rapidly lost 300 feet of altitude on its approach because the auto-throttle inexplicably shut off. The pilots recovered and nobody was injured.

FILED DATE: 9/20/2022 5:16 PM 2022L008466

29. About three months later, in September 2007, a Boeing 737 auto-throttle inexplicably disconnected while the plane was on approach to Hampshire, England. Again, the pilots recovered and nobody was injured.

30. On or about February 25, 2009, a Turkish Airlines Boeing 737-800 crashed on its approach to Amsterdam Schiphol Airport, Netherlands. The auto-throttle malfunctioned and decreased engine power to idle as the plane was landing, causing it to stall. Nine people died, including all three pilots.

31. The Dutch Safety Board ("DSB"), assisted by the NTSB, Boeing, and the FAA, investigated the crash. Investigators found a faulty radio altimeter was responsible for the malfunction of the auto-throttle. They also partly blamed the accident on pilot error.

32. On or about July 6, 2013, a Boeing 777, Asiana Flight OZ 214, crashed on its approach to San Francisco International Airport when the auto-throttle failed to maintain sufficient speed.

33. Pilots of the Asiana Flight told the National Transportation and Safety Board ("NTSB") they set the automatic throttle at 137 knots, but the automatic throttle did not maintain the set speed. The NTSB investigators found Boeing failed to provide clear instructions regarding the auto-throttle, specifically its ability to automatically maintain speed. They also partly blamed the accident on pilot error.

34. Three people died in the crash and approximately 200 were injured. Boeing and Asiana Airlines settled the lawsuits in the U.S. for confidential amounts.

FILED DATE: 9/20/2022 5:16 PM 2022L008466

35. Boeing's failures to adequately warn airlines and pilots of auto-throttle dangers have been compared to its failures proceeding the more recent crash of the two 737 Max 8 aircraft in Indonesia and Ethiopia.

36. As of October 2020, more than 10,000 Boeing 737 aircraft had been built and delivered. There was a fleet of 957 of the 737 "classic" aircraft in use, with 814 owned by Airlines. Six hundred of the planes were in service and 357 were in storage.

37. The age of an aircraft is generally based on chronological age, flight hours, and flight cycles. The subject aircraft was 26 years old, had 62,983 hours of flight time, and 40,383 flight cycles at the time of the crash. Boeing 737 aircraft of this age, and notably older, are still flying in commercial and private service and are also available for purchase. Just as older automobiles require more maintenance and attention, so do older aircraft.

38. On March 23, 2020, the subject aircraft was parked due to the coronavirus pandemic.

39. On July 24, 2020, the Federal Aviation Administration ("FAA") issued an emergency airworthiness directive for 2,000 U.S. registered Boeing 737 NG and "Classic" airplanes, including the 737-500. The FAA warned of possible corrosion of air check valves on planes parked for seven days or more. Damage from such corrosion "can lead to double engine failure."

FILED DATE: 9/20/2022 5:16 PM 2022L008466

40. The FAA emergency airworthiness directive ordered U.S. airlines flying Boeing 737 airplanes to not operate the planes until inspected and any corroded valves were replaced.

41. On or about December 14, 2020, after the subject aircraft had been parked for nine months, the Indonesian Ministry of Transportation inspected the plane. The Ministry issued a new certificate of airworthiness three days later.

42. On or about December 19, 2020, the aircraft was flown from storage in Surabaya, Indonesia, to Jakarta, the nation's capital. On that same day, the aircraft resumed passenger service.

43. From December 19 until the crash on January 9, the subject aircraft logged 132 flights. In other words, the plane went from zero flights in nine months to 132 flights in less than three weeks.

44. According to the maintenance log, in the days leading up to the fatal flight, pilots repeatedly reported issues with the auto-throttle. Problems with the auto-throttle can, among other significant troubles, cause unequal thrust between engines.

45. On or about January 3, 2021, a pilot reported the auto-throttle was "unserviceable." An engineer rectified the problem by cleaning the auto-throttle computer's electrical connector. After the cleaning, the Built-in Test Equipment ("BITE") result was good.

FILED DATE: 9/20/2022 5:16 PM 2022L008466

46. On or about January 4, a pilot again reported the auto-throttle was "unserviceable." The engineer again attempted to clean the auto-throttle computers electrical connector, but the problem persisted.

47. On or about January 5, an engineer addressed the issue by cleaning the auto-throttle Takeoff and Go Around ("TOGA") switch. After this, the BITE test result was good.

48. On the fatal flight, when the plane reached 8,150 feet, the left engine throttle moved back while the right lever stayed in its position, suggesting the automatic throttle was stuck, according to the Indonesian National Transportation Safety Committee ("KNKT").

49. This unequal thrust between the two engines caused a roll and dive according to the KNKT report.

50. Four minutes after leaving Jakarta, the plane lost contact with ground control. There was no distress signal.

51. The plane descended 10,900 feet in 22 seconds, or almost 50,000 feet per minute. A normal descent would be 1,500-2,000 feet per minute. The plane crashed into the Java Sea about 12 miles north of Jakarta.

52. All plaintiffs' Decedents were among the victims killed in this crash.

53. The Flight Data Recorder ("FDR") and Cockpit Voice Recorder ("CVR") were recovered and are being analyzed by the KNKT.

54. As the world comes out of the coronavirus pandemic, hundreds of Boeing planes are coming out of storage. Millions of passengers around the world will again

FILED DATE: 9/20/2022 5:16 PM 2022L008466

be flying on these planes with problems caused by long-term parking and this dangerously dicey auto-throttle.

## COUNT I
## NEGLIGENCE PRODUCT LIABILITY

55. Paragraphs 1-54 are incorporated herein by reference.

56. At all times relevant, Boeing owed a duty to plaintiffs to exercise reasonable care in the design, manufacture, assembly, and sale of the accident aircraft.

57. Boeing negligently breached the duty of care it owed to plaintiffs through one or more of the following negligent acts or omissions:

a. Negligently designed, manufactured, assembled and sold the subject aircraft such that the automatic throttle system was subject to failure. Failures include, specifically, the automatic throttle can stick and thereby cause significant differences in power between engines, resulting in a loss of control of the aircraft;

b. negligently designed, manufactured, assembled and sold the subject aircraft such that the engine first stage check valve was subject to corrosion, causing it to become stuck in the open position during flight, resulting in an uncontrollable compressor stall and loss of control of the aircraft;

c. negligently failing to provide adequate warnings and instructions on how to respond to a failure in the automatic throttle, corrosion of

FILED DATE: 9/20/2022 5:16 PM 2022L008466

check valves, or the dangers of parking an aircraft for an extended period;

d. failing to act in the manner of a reasonably prudent aircraft manufacturer. Specifically, Boeing failed to appreciate the dangers, correct design flaws, install non-defective equipment, and continuingly issue adequate warnings and instructions.

58. Boeing had repeated notice of dangers with the auto-throttle. For example, in 2001, the FAA ordered operators of the 737 aircraft, specifically including the 737-500, to replace the automatic throttle computer after reports of unequal thrust. In 2007, auto-throttles on 737 aircraft malfunctioned and inexplicably shut down in two separate incidents when planes were approaching to land. In 2009, a Boeing 737 crashed when the auto-throttle malfunctioned and caused a stall because Boeing failed to issue adequate warnings regarding this known issue. In 2013, lack of sufficient warnings regarding the auto-throttle was one of the culprits in the crash of a Boeing 777. And more recently, just a week before the crash, pilots reported issues with the subject aircraft's auto-throttle.

59. Further, parking hundreds of commercial passenger aircraft for several months was essentially unprecedented prior to the world-wide coronavirus pandemic. Boeing failed to adequately warn and instruct users about the dangers.

60. Boeing had notice of the dangers in the auto-throttle, the dangers of corroding engine check valves, and other dangers inherent in parking a plane for an extended period.

FILED DATE: 9/20/2022 5:16 PM 2022L008466

61. As a direct and proximate result of one or more of the aforesaid negligent acts or omissions of defendant Boeing, the auto-throttle failed within minutes after the accident aircraft departed the runway and while it was over land. The thrust lever for the left engine of the accident aircraft began reducing, while the thrust lever for the right engine remained the same. This condition remained throughout the short duration of the accident flight.

62. As a direct and proximate result of one or more of the negligent acts and omissions of defendant Boeing and the resulting failure of the auto-throttle, the accident aircraft was caused to go into an upset from which the flight crew was unable to recover and the accident aircraft was caused to go out of control and violently crash killing all those aboard, including the plaintiffs' decedent.

63. Boeing had an ongoing duty to warn and instruct users of the plane of these dangers. Boeing failed in that duty.

64. Such negligence was a violation of applicable law and a proximate cause of wrongful deaths of all plaintiffs' Decedents.

WHEREFORE, plaintiffs pray for the entry of a judgment in their favor and against defendant, The Boeing Company, for an amount in excess of the minimum jurisdictional amount of the Law Division of the Circuit Court of Cook County, Illinois, together with attorney fees, costs, and prejudgment interest.

## COUNT II
## STRICT PRODUCT LIABILITY

65. Paragraphs 1-64 are incorporated herein by reference.

FILED DATE: 9/20/2022 5:16 PM 2022L008466

66. Under the common law as summarized in the Restatement of Torts, 2d, Section 402A, "one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if the seller is engaged in the business of selling such a product, and it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." Restatement (Second) of Torts § 402A (1965).

67. At the time the accident aircraft left the custody and control of defendant Boeing, it was defective and unreasonably dangerous in one or more of the following respects:

a. the auto-throttle was subject to failure and, in fact, on January 3, 2021 and again on January 4, 2021, just days before the subject crash, the pilot of the accident aircraft reported the auto-throttle was unserviceable;

b. the auto-throttle was subject to the thrust lever for one engine reducing, while the thrust lever for the other engine remained the same, resulting in significant differences in power being provided to the engines and causing an upset and a loss of control; and/or

c. the accident aircraft did not provide any warnings of these unreasonably dangerous and defective conditions

68. Defective equipment on the subject aircraft, including the automatic throttle system, failed and caused the fatal crash.

FILED DATE: 9/20/2022 5:16 PM 2022L008466

69. Such failures and malfunctions were the direct and proximate cause of the wrongful deaths of all plaintiffs' Decedents.

70. Therefore, Boeing is strictly liable to plaintiffs for all damages allowable under applicable law.

WHEREFORE, the plaintiffs pray for the entry of a judgment in their favor and against defendant The Boeing Company for an amount in excess of the minimum jurisdictional amount of this Court, together with costs and such other damages allowed by law.

## COUNT III
## LOSS OF CONSORTIUM

71. Paragraphs 1-69 are incorporated herein by reference.

72. The negligence and strict liability alleged in the previous causes of action were additional proximate causes of the Loss of Consortium experienced by spouses of Decedents.

73. Boeing is liable for said Loss of Consortium each of these plaintiffs have suffered as the result of the defendants' wrongful conduct.

## DAMAGES

74. As a proximate result of defendant Boeing's wrongful conduct, Plaintiffs have suffered all manner of both general and special damages.

75. Plaintiffs have suffered loss of love, comfort, care, companionship, guidance, society, and all other forms of consortium. They have experienced grief, sorrow, and mental anguish.

FILED DATE: 9/20/2022 5:16 PM 2022L008466

76. Plaintiffs have suffered loss of net accumulations in Decedent's estate, loss of support, and loss of services.

77. Said damages have been sustained in the past and will continue in the future.

78. The exact nature and extent of Plaintiff's damages to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for judgment against the defendants awarding plaintiffs the following:

79. Non-economic general damages;

80. Economic damages;

81. Pre-judgment and post-judgment interest;

82. Actual attorneys' fees and costs incurred herein; and,

83. Such other relief as the Court deems just and equitable.

September 19, 2022

Respectfully submitted,

By: */s/ Carmen D. Caruso*

Carmen D. Caruso (# 6189462)
cdc@cdcaruso.com

Xiaoyin Cao
xcao@cdcaruso.com

CARMEN D. CARUSO LAW FIRM
77 West Washington Street, Suite 1900
Chicago, IL 60602

FILED DATE: 9/20/2022 5:16 PM 2022L008466

(312) 626-1160
Firm ID #27780